ROBERT MATCH, Respondent-Appellant, v GLORIA MATCH, Appellant-Respondent.

First Department, April 7, 1992

APPEARANCES OF COUNSEL

*Paul Martin Weltz* of counsel *(Weltz & Posner,* attorneys), for appellant-respondent.

*Myrna Felder* of counsel *(Raoul Lionel Felder, P. C.,* attorney), for respondent-appellant.

### OPINION OF THE COURT

ASCH, J.

The plaintiff husband has been employed at Long Island Jewish Hospital for many years and is currently the president and chief executive of that institution. The defendant wife, at the time the parties were married in 1964, was employed by the Health Insurance Plan of Greater New York and worked in various health care positions with flexible hours and "mini-

mal" duties during the marriage, so that she could manage their home and accompany her husband on various trips and to conferences.

While the plaintiff instituted an action for divorce in 1983, it was withdrawn by stipulation in 1984. On the same day that action was withdrawn, the defendant began her own action for separation. The plaintiff then served the defendant with a summons and complaint seeking a divorce in 1986. At the same time, he also moved to consolidate that action with the pending separation proceeding. This motion was denied as moot when a judgment of separation was entered in December 1986. That judgment awarded defendant, *inter alia*, maintenance of $11,000 monthly. On appeal, we modified that order by reducing the maintenance to $7,000 monthly *(see, Match v Match,* 134 AD2d 210).

Plaintiff began this action in 1987 based upon the judgment of separation entered more than one year previously. After trial, the IAS court granted plaintiff a divorce and divided the marital property as follows:

During the marriage, the parties acquired two cooperative apartments on Long Island of approximately equal value. Each party was awarded one unit. The parties had acquired a vacant parcel of land also on Long Island appraised at $300,000. The court ordered it sold and the proceeds divided equally between the parties, finding that in view of the long duration of the marriage, and the fact that the defendant contributed to the marriage by managing the home as "agreed", a 50-50 division of the marital property was proper. The court found that defendant was entitled to one half of the "substantial" pension accumulated by plaintiff, plus 9% interest. The court used the date of the commencement of the divorce action, December 31, 1987, as the controlling date for the valuation of the pension accounts. The court initially made a finding that the defendant needed $9,000 monthly in maintenance before taxes ($108,000 per year), but that the value of the interest earned by defendant on plaintiff's pension ($45,000 per year) would be applied to reduce the maintenance to $5,084 monthly. This amount would further be reduced by the Social Security payments received by defendant after she reached 65, and when plaintiff retired, the maintenance would be reduced to $15,000 a year. Thereafter, the court modified this portion of the award and increased the monthly maintenance to $9,500 ($6,000 balance to be paid monthly) and deleted the provision providing that the mainte-

nance would be automatically reduced upon plaintiff's retirement. Finally, the court required the defendant to pay her own attorneys' and accountants' fees.

■ Defendant contends that in awarding maintenance, the IAS court erroneously applied the prior standard of "reasonable needs" instead of the statutorily mandated "standard of living of the parties established during the marriage" (Domestic Relations Law § 236 [B] [6] [a]). This is an incorrect interpretation of the IAS court's decision, which specifically made the maintenance award to defendant "to continue a lifestyle plaintiff is able to provide while he is still working".

The defendant correctly points out that this court previously awarded her $7,000 monthly in maintenance, together with her salary of $30,000 yearly, plus use and occupancy of the apartment with plaintiff paying the $20,000 per year expenses and $15,000 in interim attorneys' fees (Match v Match, supra). At first blush, it would appear that defendant is correct that there are patent deficiencies since she was awarded only $6,000 monthly by the nisi prius court, she is no longer earning the $30,000 annually, and must pay the $20,000 yearly cost of the housing herself. In addition, the defendant, pursuant to the present judgment, must pay her own attorneys' fees, and is responsible for her own debt, which includes some $200,000 in tax liability.

However, analysis of the award shows that the IAS court concluded that the prior $7,000 maintenance award by this court was *not enough* for the needs of defendant and calculated that defendant needed an additional $2,500 monthly to cover those costs which had previously been borne by plaintiff. In addition, while we had not factored into our award any income from plaintiff's pension (since none had yet been awarded), the IAS court properly concluded that the income earned on the pension, which was awarded by it to defendant, should be applied to reduce the monthly maintenance payment. The court also properly took into account the income defendant would be earning, not only from the pension income, but also her share of the proceeds of the sale of land appraised at $300,000 and Social Security payments.

In determining the amount and duration of the maintenance award, Domestic Relations Law § 236 (B) (6) (a) notes that the court shall consider "(1) the income and property of the respective parties including marital property distributed pursuant to subdivision five of this part". Further, while the

defendant was working for $30,000 yearly at the time of our prior award and was not working at the time this judgment was entered, the IAS court noted, in its decision that "she could be working and that she has chosen not to do so". In any event, the court's award which assessed her needs at $9,500 monthly or $114,000 yearly was extremely fair and proper and did not penalize defendant for choosing not to work, since it expressly found that "it is doubtful that at this stage in her life she could work for any substantial period of time".

We find that the IAS court properly denied defendant additional maintenance because of the substantial debt she had accrued on her income tax obligations. As that court pointed out in its amended decision, "The amounts she has been awarded by the courts over the last several years took into consideration her income tax obligations. Obviously she has neglected this obligation and her profligacy has caused this unfortunate situation. Defendant should not be rewarded for her defalcation by ordering plaintiff to now assume that obligation." Further, the court noted that there was a discrepancy between the wife's total receipts and her total disbursements amounting to a "substantial sum", leading to the inference that much of this excess had been either secreted or squandered by the defendant.

Finally, with respect to the maintenance award, we note that defendant asserts that it should be increased since the parties "lived a most lavish and exciting lifestyle", living in a luxury apartment on Fifth Avenue, dining and entertaining often in expensive restaurants. She asserts that she owned between 15 and 20 formal gowns and the parties belonged to a golf and tennis club and traveled world wide. However, the expenses which were paid by plaintiff's employer, the Long Island Jewish Hospital, were then and are not now available to the plaintiff as income. In reviewing the separation maintenance award on the prior appeal, we wrote an analysis of this argument based on expense account living which applies with equal force in this case. "In awarding this level of maintenance, the trial court focused much too narrowly on the factor of prior standard of living, albeit a very important factor, without giving due regard to the equally important factor of the fairness of the award to defendant. The award ignores the fact that a primary reason plaintiff enjoyed a fairly luxurious standard of living, which included an apartment at the most exclusive address in Manhattan, extensive travel and enter-

tainment, was because those very expenses were paid by the husband's employer and were provided on a tax-free basis to the couple. To now expect that the husband maintain plaintiff at that standard of living out of his income, and require that he provide plaintiff with sufficient income so that she can maintain this standard after taxes, even if it means depleting more than half his salary, is to require that his income provide what it did not even do during the marriage." *(Match v Match, supra,* at 211.)

We have examined the remaining contentions of defendant and find them to be without merit.

In his cross appeal, the plaintiff complains that in evaluating his pension plan for equitable distribution purposes, the IAS court erred in utilizing the date that plaintiff commenced this divorce action rather than the earlier date that defendant commenced her separation action. The parties stipulated that the value of the pension plan at the time of the commencement of the separation action was $515,316.55 and at the commencement of the divorce action herein, begun over three years later, the value had increased to $991,866.31.

The Court of Appeals in the seminal case of *Majauskas v Majauskas* (61 NY2d 481, 491-492) noted: "Whether the plan is contributory or noncontributory, the employee receives a lesser present compensation plus the contractual right to the future benefits payable under the pension plan. The value of those contractual rights will vary depending upon the number of years employed, but where, as here, the rights are vested, or where they are matured, they have an actuarially calculable value. To the extent that they result from employment time after marriage and before commencement of a matrimonial action, they are contract rights of value, received in lieu of higher compensation which would otherwise have enhanced either marital assets or the marital standard of living and, therefore, are marital property."

The difficulty we face is in deciding what constitutes "commencement of a matrimonial action". It appears that there is a conflict on this issue between the First and Second Departments. Thus in *Lennon v Lennon* (124 AD2d 788), the Second Department held that assets acquired by the husband after the commencement of the wife's successful action for a separation were his separate property and not marital property. The Appellate Division reasoned as follows:

"Insofar as is relevant herein, the Equitable Distribution

Law (Domestic Relations Law § 236 [B] [1] [c]), provides as follows: 'The term "marital property" shall mean all property acquired by either or both spouses during the marriage *and before the \* \* \* commencement of a matrimonial action'* (emphasis supplied).

"In the case at bar, the separation action commenced by the wife was not only a 'matrimonial action' *(see,* Domestic Relations Law § 236 [B] [2]), but one which clearly signalled the end of the 'economic partnership' of the subject marriage. Accordingly, any assets acquired by the defendant after the date of commencement by the plaintiff of the action for a separation and not otherwise the product of a sale or exchange of any marital property should be categorized as separate, rather than marital property." *(Supra,* at 790.)

This holding was reaffirmed by the Second Department in *Butti v Butti* (151 AD2d 633, 634): "defendant's commencement of a matrimonial action \* \* \* which culminated in a 1985 judgment of separation signaled the end of the parties' economic partnership for purposes of determining which assets are part of the marital estate".

However, in *Jolis v Jolis* (111 Misc 2d 965, 968, *affd* 98 AD2d 692), the Supreme Court in New York County found that: "Section 236 (part B, subd 5, par a) of the Domestic Relations Law provides that the court shall determine the parties' equitable entitlement to marital property in 'certain matrimonial actions.' A separation action is excluded therein from those matrimonial actions to which equitable distribution applies. This court, therefore, finds that the Legislature intended to defer the equitable distribution of marital assets belonging to separated spouses, as such an act of finality should be suspended until an action is commenced to dissolve the marriage. Consequently, both spouses are on notice that property acquired after the commencement of a separation action may still be subject to equitable distribution at a later date, should a dissolution of the marriage subsequently occur."

Plaintiff's argument that the commencement of a separation action should be regarded as the commencement of a "matrimonial action" for the purpose of establishing a "cutoff" date for the acquisition and distribution of marital property has some surface appeal since, as noted, Domestic Relations Law § 236 (B) (1) (c) provides that "[t]he term 'marital property' shall mean all property acquired by either or both

spouses during the marriage and before the execution of a separation agreement or the commencement of a matrimonial action" and Domestic Relations Law § 236 (B) (2) states that: "[e]xcept as provided in subdivision five of this part, the provisions of this part shall be applicable to actions for * * * a separation". However, subdivision (5) (a) of part (B) explicitly notes with regard to disposition of property "in certain matrimonial actions", in pertinent part, that the court "shall determine the respective rights of the parties in their separate or marital property, and shall provide for the disposition thereof", but limits this determination and disposition *only* to "an action wherein all or part of the relief granted is divorce, or the dissolution, annulment or declaration of the nullity of a marriage, and in proceedings to obtain a distribution of marital property following a foreign judgment of divorce". *(See also,* Scheinkman, Practice Commentary, McKinney's Cons Laws of NY, Book 14, Domestic Relations Law C236B:4, at 196-197.)

In accord with this interpretation, the Third Department in a well-written opinion, recently came to the same conclusion *(Anglin v Anglin,* 173 AD2d 133, 136), noting with respect to Domestic Relations Law § 236 (B) (2) that it "was not to provide a definition of matrimonial actions for general application throughout the statute. Rather, its objective was twofold: (1) to insure that the equitable distribution provisions of the statute would only be operative within the narrow set of matrimonial actions where the marriage is being or has been terminated, and (2) to direct that the remaining provisions of the statute (e.g., regarding maintenance and child support) be applied in *all* matrimonial actions *(see, Petre v Petre,* 130 Misc 2d 333, 334, *affd on opn below* 122 AD2d 559; 3 Foster, Freed and Brandes, Law and the Family New York § 2:10, at 81 [2d ed]). It follows that the listing of a separation action in Domestic Relations Law § 236 (B) (2) as one of the matrimonial actions to which all of the provisions of the statute, *except* equitable distribution, apply should have no bearing on interpreting the reference to a matrimonial action in the statutory definition of marital property subject to equitable distribution in one of the actions listed in section 236 (B) (5)".

The plaintiff urges us to adopt the reasoning of the Supreme Court in Suffolk County in *Musumeci v Musumeci* (133 Misc 2d 139) in adjusting the percentages to be distributed to the parties. In so doing, however, the plaintiff, in effect, concedes

that the statute precludes the selection of a valuation date earlier than the commencement of the divorce action.

In *Musumeci (supra),* the court found that the wife delayed bringing the action for divorce after her husband had abandoned her so that the period of abandonment was actually longer than the period of the marriage. Thus, it crafted a decree awarding the wife a portion of the pension using as a basis for its calculations the "contributions" of the wife to the marriage during the applicable periods when the parties were together. However, in spite of this, it found that it was bound by the language of the statute to compute the marital portion of the pension *from the date of the commencement of the action* rather than the date of the abandonment. The same equitable considerations which might have impelled the result in *Musumeci* are not present herein, however. As the IAS court found in its decision, plaintiff could have cut off defendant's rights earlier if he had commenced a valid divorce action any time after the parties separated. If the plaintiff had no grounds for divorce until the commencement of this action for a conversion divorce, then it would be unfair to penalize defendant by selecting an earlier date.

Accordingly, the amended judgment of divorce of the Supreme Court, New York County (Walter Schackman, J.), entered December 10, 1990, should be affirmed, without costs or disbursements.

CARRO, J. P., MILONAS and ROSENBERGER, JJ., concur.

Amended judgment of divorce of the Supreme Court, New York County, entered December 10, 1990, is affirmed, without costs or disbursements.