OPINION OF THE COURT
David B. Saxe, J.
Defendant Etan Merrick, the wife of plaintiff David Merrick, requests an order requiring the plaintiff to post the sum of $440,000 for additional security for payment of temporary maintenance and child support, and also providing that if this security is not posted, additional property belonging to the plaintiff should be sequestered with defendant appointed as receiver. She further asks for (1) an order directing plaintiff to obtain life insurance in the amount of $2 million, designating defendant as sole beneficiary; (2) a direction that plaintiff file an updated net worth statement; (3) permission to expend $14,236 from already sequestered funds for repairs to the marital residence and for appliance replacements; (4) approval *561 for an expenditure from the sequestered funds of $225 for the entrance exam and application fee for "C’s” application to the Trinity School; (5) awarding defendant $1,500 for summer day camp expenses of "C” and "O,” the children Etan Merrick is attempting to adopt.
By separate motion, Mrs. Merrick asks for an order sealing the court file in this action, closing the courtroom in all proceedings in this action, directing that the caption in this case be amended to read "Anonymous v Anonymous,” and restraining the plaintiff and his attorneys or agents from discussing this case with the media or disclosing case documents to third persons.
I.
First, addressing the wife’s privacy concerns: Domestic Relations Law § 235 (1) provides that in matrimonial actions, court personnel may not permit anyone other than a party or attorney for a party to take or see a copy of "any of the pleadings, affidavits, findings of fact, conclusions of law, judgment of dissolution, written agreement of separation or memorandum thereof, or testimony”. This provision protects against the "indiscriminate inspection and publication of the details of matrimonial matters” (Scheinkman, Practice Commentary, McKinney’s Cons Laws of NY, Book 14, Domestic Relations Law C235:l, at 119). It is noteworthy, however, that the statute does not provide complete privacy to matrimonial litigants. As Professor Scheinkman points out, it "does not include court decisions and orders, such as orders made on motions or post-trial decisions. Indeed, the case reporters are replete with reported decisions with the parties’ names stated. Official legal newspapers and even the general media report on decisions in matrimonial actions. While in some instances, decisions are publicly reported with fictitious names substituted for the true names of the parties, the statute does not completely provide for the privacy of all documents in a court matrimonial file.” (Id., at 121.)
The file in this action is already considered sealed pursuant to Domestic Relations Law § 235 (1). The court need not issue an order directing compliance with the statute. Nor will it issue an order giving broader protection than does the statute.
As to closure of the courtroom, public access to court proceedings is strongly favored (Richmond Newspapers v Vir *562 ginia, 448 US 555; Anonymous v Anonymous, 158 AD2d 296, 297 [1st Dept 1990]). Judicial proceedings are presumptively open to the public and the press, unless there are compelling reasons for closure (Matter of Herald Co. v Weisenberg, 89 AD2d 224, affd 59 NY2d 378 [1983]). In divorce actions, Judiciary Law § 4 provides that the court may, in its discretion, exclude all persons not directly interested. Domestic Relations Law § 235 (2) overlaps to some extent with Judiciary Law § 4, but Domestic Relations Law § 235 (2) authorizes closing the courtroom in a matrimonial action "If the evidence * * * be such that public interest requires that the examination of the witnesses should not be public”. As noted in the Practice Commentary, "DRL 235 (subd. 2) does not, however, authorize the closing of proceedings because of the private interests of the particular litigants. Rather, the court must be convinced that the 'public interest’ requires closure” (Scheinkman, Practice Commentary, McKinney’s Cons Laws of NY, Book 14, Domestic Relations Law C235:2, at 123).
Considering the issue of public interest, in Sprecher v Sprecher (NYLJ, June 21, 1988, at 26, col 6 [Sup Ct, NY County]) the trial court denied a motion to close the courtroom in a highly publicized matrimonial action involving a child’s custody. Although the point was raised that teachers, other children, and parents were treating the child differently as a result of the publicity, the court noted that the public’s interest in learning about the child rearing practices of the members of the Sullivan Institute for Psychoanalysis weighed in favor of an open courtroom. The court therefore denied the motion in Sprecher for an order closing the courtroom and changing the caption to anonymous or fictitious names. With respect to keeping the courtroom open, the Appellate Division agreed (although it directed the change to an anonymous caption) (see, Anonymous v Anonymous, 158 AD2d 296, supra).
In support of her motion, the defendant wife states that news articles which have appeared regarding the matrimonial action are having a detrimental effect on the parties’ 19-year-old daughter Marguerite and two nursery school age "adoptive” children who reside with the defendant. However, with regard to the three children, the assertion is not supported by evidentiary submissions. In an affirmation, counsel states "upon information and belief’ that Marguerite has told defendant that her schoolmates at Cornell University have taunted her. Defendant’s affidavit less informatively states merely that *563 Marguerita is depressed. It is further stated that the articles have an effect on the younger children, although the nature of such effect is not specified. What defendant’s papers do establish is that defendant is upset when details of her personal life are published in this fashion.
Given the policy in favor of public access to the court (Richmond Newspapers v Virginia, 448 US 55, supra; Anonymous v Anonymous, 158 AD2d 296, 297, supra), the defendant’s emotional response to media coverage of this action cannot alone form the basis for closure of the courtroom.
The defendant also seeks what is commonly called a "gag order” — restraining the plaintiff, his agents and his attorneys from discussing this case with the media or distributing documents or information in this case to third parties.
A prior order by Justice Schackman has already prohibited the plaintiff’s attorneys from disclosing and discussing with the media any documents submitted in these proceedings. This order constitutes the law of the case. I will not, however, issue an order even more severe than that, given the showing here.
The law in this State is sparse with regard to discussion of the use of an anonymous caption in matrimonial actions. As a general matter, however, such relief is viewed as addressed to the sound discretion of the trial court, upon consideration of the competing factors of the parties’ need for such protection against the public’s interest in maintaining public access to our courts (see, e.g., Lindsey v Dayton Hudson Corp., 592 F2d 1118, 1125 [10th Cir 1979], cert denied 444 US 856 [1979]; Doe v Stegall, 653 F2d 180, 186 [5th Cir 1981]).
Of course, the trial court must actually exercise its discretion, and not simply apply a blanket policy to all cases (see, Doe v Bodwin, 119 Mich App 264, 326 NW2d 473, 476 [1982]). Here, while the parties do have children, the litigation does not involve custody of them (compare, Anonymous v Anonymous, 158 AD2d 296, supra). The issues in this case primarily concern the parties alone, except to the extent of the issue of child support, and while an effect on the children has been asserted, that bare assertion has not been supported. About such a showing, I find no public interest favoring an anonymous caption while a strong public interest is present favoring the presumption of openness in judicial proceedings.
Accordingly, the motion is denied.
*564 II.
I turn to the issue of security for the payment of temporary maintenance and child support.
An order dated October 10, 1990, directed the plaintiff husband to pay defendant $6,250 per month for temporary maintenance and $5,000 per month, child support (later increased by $750 per month). Following several enforcement motions and entry of money judgments for arrears and the counsel fee award, the court ordered plaintiff to post a bond of $250,000 as security for these court-ordered payments. When no undertaking was filed, on March 1, 1991, the court ordered the sequestration of certain funds totalling $384,177.12, and appointed defendant as receiver of those funds.
The defendant demonstrates in her papers that those sequestered funds will be virtually exhausted by the end of September 1992, and consequently she seeks another sequestration order involving other assets of the plaintiff. She asserts that security for two years’ worth of payments, or $440,000, is necessary.
Given the history of litigation tactics in this action, I agree with the defendant that the posting of security is appropriate, and that absent such undertaking, sequestration of real estate belonging to the plaintiff is in order. I direct that within 20 days of service of a copy of this order with notice of entry, the plaintiff post as security $220,000, or approximately one year’s temporary support, to be held by defendant as receiver, and if such security is not posted as required, defendant may submit to this court upon five days’ written notice a further order providing for sequestration of the assets set forth in defendant’s request for relief, with defendant as receiver with authority to sell.
III.
The defendant also seeks an order directing plaintiff to purchase and maintain for a period of at least two years insurance on his life with a death benefit of $2 million, designating defendant as the sole and irrevocable beneficiary of the policy, or, alternatively, to provide in his will a bequest to the defendant in that amount. This sum, she states, approximates what it will cost to raise and educate the children through college.
Domestic Relations Law § 236 (B) (8) (a) provides that "In *565 any matrimonial action the court may order a party to purchase, maintain, or assign a policy of insurance * * * on the life of either spouse, and to designate either spouse or children of the marriage as irrevocable beneficiaries during a period of time fixed by the court. The interest of the beneficiary shall cease upon the termination of such party’s obligation to provide maintenance, child support or a distributive award, or when the beneficiary remarries or predeceases the insured.” This statute was enacted to remedy the prior law under which courts were not authorized to order such insurance coverage (see, Rosenberg v Rosenberg, 42 AD2d 590 [2d Dept 1973]). Under prior law a spouse dependent upon spousal support lost that source of support when the former supporting spouse died. "The purpose of subdivision 8(a), therefore, is to make certain that the payment of maintenance, distributive awards, and child support are made as ordered” (3 Foster, Freed & Brandes, Law and the Family § 12:1, at 492 [2d ed]).
This statute has been applied to pendente lite support awards (see, Zerilli v Zerilli, 110 AD2d 634 [2d Dept 1985]), as well as final determinations (see, Price v Price, 113 AD2d 299, 309 [2d Dept 1985]).
However, the plaintiff argues that (1) at the age of 80, he is unlikely to be able to obtain life insurance, and (2) if he does obtain it, the defendant will not be motivated to proceed to trial.
Inasmuch as there is no showing that the defendant has taken any action to delay the trial of this case, the plaintiff’s second argument is not persuasive. Accordingly, in order to ensure that the defendant and the children still receive support in the event of plaintiff’s death prior to final judgment in this matter, the plaintiff is directed to take all necessary steps to obtain life insurance coverage of $1 million, naming the defendant as irrevocable beneficiary.
However, the defendant has offered no support for the alternative relief sought, i.e., an order that absent provision of life insurance coverage, the court direct the plaintiff to include a bequest in his will. This portion of the relief is therefore denied.
IV.
The remaining relief sought by the defendant is granted only to the following extent: (1) the parties are directed to exchange current net worth statements by June 30, 1992; (2) *566 the defendant is hereby authorized to expend sequested funds to replace the washer and dryer, to pay for the entrance exam and application fee in connection with the child’s admission to the Trinity School, and to pay up to $4,250 for the repair or replacement of the leaky roof; and (3) the defendant is awarded $4,500 for the summer day camp expenses of the younger children.