OPINION OF THE COURT
David B. Saxe, J.
Several novel questions are presented in this postjudgment proceeding for equitable distribution:
When a spouse obtains a divorce in another State, and then returns to this State to obtain equitable distribution, what is the cut-off date for the acquisition of marital property?
Is full, liberal disclosure available in such a proceeding?
Is an award of counsel fees authorized under Domestic Relations Law § 237?
The parties married in 1958, and separated in 1982. In 1983, Mr. Sullivan commenced an action for divorce in Westchester County. Following trial, on July 20, 1987, the court dismissed *442 the action, finding that Mr. Sullivan had not established grounds for divorce; it awarded Mrs. Sullivan $8,000 per month for maintenance. In August 1987 Mr. Sullivan sued for divorce in Illinois; in December 1989 a divorce was granted to Mr. Sullivan by that court on grounds of irreconcilable differences. That court could not and did not render any determination on the marital financial issues. Consequently, Mr. Sullivan has sued in this court for equitable distribution; he also seeks downward modification of the Westchester court’s maintenance award.
Mr. Sullivan has taken the position that any property he acquired after August 1987 is separate property, since the Illinois divorce action was commenced at that time; he therefore limits his net worth statement to assets and liabilities as of that date, and refuses to answer deposition questions or provide demanded documents concerning assets and liabilities acquired after that date. Mrs. Sullivan now requests a ruling that the cut-off date for the acquisition of marital property is the date of commencement of this proceeding. She also seeks counsel fees, a direction that she be designated beneficiary of a $1,000,000 policy on Mr. Sullivan’s life, and an order that Mr. Sullivan provide full disclosure of his finances to the present.
I. The Cut-Off Date for Marital Property
Domestic Relations Law §236 (B) (1) (c) defines marital property as: "[A]ll property acquired by either or both spouses during the marriage and before the execution of a separation agreement or the commencement of a matrimonial action” (emphasis added).
The husband suggests that the commencement of a foreign divorce action falls squarely within the foregoing provision. The wife offers several bases upon which to reject his position.
The definition of "matrimonial actions” in Domestic Relations Law § 236 (B) (2) specifically includes "proceedings to obtain maintenance or a distribution of marital property following a foreign judgment of divorce.” It certainly would not run counter to the statute to hold that the commencement date of this proceeding is the cut-off date for marital property.
Moreover, I agree with Mrs. Sullivan that since Mr. Sullivan failed to prove entitlement to a divorce in New York and therefore failed to cut off marital property rights in this State in 1983, he should not be able to do so by an action in a *443 foreign State whose authority and jurisdiction was limited to ruling on the marriage itself.
My conclusion is supported by the decision of the First Department in a somewhat analogous situation (see, Match v Match, 179 AD2d 124 [1992]; but see, Lennon v Lennon, 124 AD2d 788 [2d Dept 1986]). The Court held in Match that when one spouse first obtained a judgment of a separation and the other spouse subsequently commenced an action for a conversion divorce, the cut-off date for the acquisition of marital property was the date the divorce action was commenced. It reasoned that if the husband had no grounds for divorce (and therefore no right to equitable distribution) until the commencement of the action for a conversion divorce, it would be unfair to penalize the wife by selecting an earlier cut-off date (Match v Match, supra, at 132).
Just as no right to equitable distribution is available in an action for separation, no such right is available in an ex parte foreign divorce action, since when a State lacks personal jurisdiction over a spouse, the divorce may not properly determine the spouse’s economic or property rights (see, Vanderbilt v Vanderbilt, 354 US 416). Employing the same line of reasoning as used in Match (supra), it would be incongruous to permit an ex parte foreign action to terminate the nonappearing spouse’s rights to subsequently acquired property.
The factors relied upon by Mr. Sullivan — the parties’ 10-year separation, the termination of any "economic partnership” upon the dissolution of the marriage — are appropriately taken into consideration by the court in distributing the marital property of the titled spouse. However, for purposes of application of Domestic Relations Law § 236 (B) (1) (c), property acquired up to the date of commencement of the present proceeding will be deemed marital property.
II. Scope of Discovery
Mr. Sullivan takes the position that since this is a special proceeding, discovery is restricted, and leave of the court is required pursuant to CPLR article 4.
This argument fails to acknowledge that the present post-judgment proceeding seeks a de nova determination of equitable distribution; it is not in the nature of a postjudgment proceeding reconsidering an issue already decided in the initial action, as was the case in Slawiak v Hollywood (123 Misc 2d 435 [Sup Ct, Erie County 1984]) and Taylor v Taylor (NYLJ, July 10, 1990, at 29, col 1 [Sup Ct, Kings County]).
*444 I am in agreement with the well-respected commentators cited by Mrs. Sullivan: in proceedings to obtain distribution of marital property following a foreign judgment of divorce, the liberal discovery rules of CPLR article 31, rather than those of article 4, should apply (see, 2 Foster, Freed and Brandes, Law and the Family New York § 13:3 [2d ed]). As was noted earlier, such proceedings are defined in Domestic Relations Law § 236 (B) (2) as matrimonial actions; they should therefore be accorded all the same discovery rights.
Accordingly, not only is Mrs. Sullivan entitled to full disclosure of assets and liabilities acquired up to the date this proceeding was commenced, she may also inquire at the husband’s deposition as to the disposition of any such assets if the information may be relevant to the tracing or valuation of marital assets.
III. Counsel Fees
Initially, Mr. Sullivan again relies upon the "special proceeding” characterization to argue that the court’s authority to award a spouse counsel fees under Domestic Relations Law § 237 is inapplicable here.
It is true that Domestic Relations Law § 237, which authorizes an award of counsel fees in divorce and separation actions, specifically delineates the types of actions and proceedings to which it applies; a proceeding for equitable distribution following a foreign divorce is not listed among them. However, I agree with Mrs. Sullivan that this proceeding is best viewed as a severed portion of a matrimonial action, and is by implication encompassed within the types of actions contemplated in section 237.
Even if I held otherwise, the equities of this situation warrant an estoppel against Mr. Sullivan’s raising this argument. It would indeed be inequitable to permit Mr. Sullivan to circumvent an otherwise applicable statutory obligation to pay counsel fees by virtue of his ability to secure a divorce in another State on grounds not available here.
Mr. Sullivan also challenges the request for fees by arguing that fees are being sought primarily for work performed in order to make the application for fees. Upon review of the submissions, I find that counsel for the wife has had to perform substantial, substantive work. Moreover, the $10,000 voluntarily paid by the husband, repeatedly characterized by the husband as "ample,” is simply insufficient to defend the wife properly, given the type of litigation which has proceeded *445 here. Furthermore, an award of counsel fees may properly include fees incurred in preparing the application for fees (see, Wyser-Pratte v Wyser-Pratte, 160 AD2d 290 [1st Dept 1990]; but see, Schussler v Schussler, 123 AD2d 618 [2d Dept 1986]). And, since the husband has not disclosed his own counsel fee obligations, it may be presumed that his are equal to or greater than those of the wife (see, Wolf v Wolf, 160 AD2d 555, 556 [1st Dept 1990]).
Mrs. Sullivan is entitled to and in need of counsel fees to permit counsel to properly defend her position in this proceeding. Her counsel demonstrates that he and his associate have incurred fees of almost $24,000 to the present. He has so far been paid an initial $5,000 retainer and $10,000 from Mr. Sullivan.
This matter is still in the discovery process, and further depositions are currently scheduled for August 25, 1992. In order to enable Mrs. Sullivan to properly defend her position here, she is awarded interim counsel fees of $20,000, to be paid directly to counsel for Mrs. Sullivan within 60 days of service of a copy of this order. This award is made without prejudice to a further application upon the trial of this matter.
IV. Life Insurance
The wife asks that the court direct the husband to name her as beneficiary of his $1,000,000 life insurance policy.
Domestic Relations Law § 236 (B) (8) (a) authorizes the court to order a spouse to "purchase, maintain or assign” a policy of life insurance for the benefit of the other spouses until such time as the obligation to provide maintenance has ended. This statute has been applied to both pendente lite support awards and final determinations (see, Zerilli v Zerilli, 110 AD2d 634 [2d Dept 1985]; Price v Price, 113 AD2d 299, 309 [2d Dept 1985]; Merrick v Merrick, 154 Misc 2d 559 [Sup Ct, NY County, Saxe, J.]).
Here, there is a court order requiring the husband to pay $8,000 per month lifetime maintenance to the 58-year-old wife, who was a homemaker throughout the 30-year marriage.
The parties disagree as to whether Mrs. Sullivan’s right to equitable distribution would be cut off if he were to die prior to determination of this proceeding. It has been held that when a spouse dies during the pendency of a divorce action, the claim for equitable distribution abates along with the action for divorce (see, Sperber v Schwartz, 139 AD2d 640 [2d *446 Dept 1988]; Davis v Davis, 75 AD2d 861, affd sub nom. Davis v Estate of Davis, 52 NY2d 850).
However, as the Second Department has recently stated, "[T]here is no rule of law which compels a finding that a cause of action for equitable distribution following a foreign divorce judgment abates upon the death of a spouse entitled to equitable distribution” (Peterson v Goldberg, 180 AD2d 260, 263). In the present case, the surviving nontitled ex-spouse would be seeking equitable distribution, while in Peterson the surviving ex-spouse was the titled spouse, and argued that his ex-wife’s claim to equitable distribution abated upon her death. However, the identical reasoning applies in both cases: a foreign judgment of divorce, rendered during both parties’ lifetimes, vested the nontitled spouse’s right to equitable distribution.
Having concluded that Mrs. Sullivan would still have a right to equitable distribution should Mr. Sullivan die, I nevertheless recognize that her need for monthly support is not obviated by that undetermined right. She currently receives $8,000 per month for her daily living expenses. Those payments would stop immediately upon Mr. Sullivan’s death, without Mrs. Sullivan having any clear-cut immediate entitlement to funds with which to continue to support herself; nor is it clear that any ultimate entitlement would be sufficient to support her.
Accordingly, the relief she seeks is reasonable. Mr. Sullivan is directed to name Mrs. Sullivan as beneficiary on an insurance policy on his life in the amount of $1,000,000, within 10 days of service of this order upon him.