OPINION OF THE COURT
Mary M. Work, J.
Jim Gordon, a reporter from the weekly newspaper The Woodstock Times, seeks to observe the remainder of the trial of Leslie B., a mother alleged to have neglected her daughter, Jane (names of all parties and family members have been changed and the decision edited for publication).
The court has heard oral argument with Mr. Gordon present in court on whether or not Mr. Gordon should be excluded from the trial. Both the Law Guardian and counsel for the Department of Social Services (DSS) argued that the underlying allegations and facts could be easily sensationalized, causing emotional trauma to 13-year-old Jane. When the Law Guardian spoke with Jane, the child was very upset at the prospect of press coverage and asked her Law Guardian to strenuously oppose it, which she did. Gary E., Jane’s father, who is not named as a respondent in the neglect proceeding and who is seeking custody of Jane, also opposed press coverage. Counsel for Ms. B. argued in support of her client’s right to have the press present.
Ms. B.’s attorney had first learned the morning of oral argument that Ms. B. had turned over to Mr. Gordon 191 pages of transcripts covering the first two days of trial. Upon learning that Ms. B.’s attorney had given the transcripts to her client, who had in turn given them to Mr. Gordon, both the Law Guardian and DSS counsel were outraged that the privacy and confidentiality of Family Court proceedings had *375 been invaded without permission or even the knowledge of the court, DSS or the Law Guardian. DSS counsel argued that Ms. B. had violated some statute or ethical constraint. Neither attorney cited any law or regulation that had been violated. The court adjourned the argument for three hours to permit counsel to research the issue of the release of the transcripts to the press.
When the case was recalled, the Law Guardian urged the court to order Mr. Gordon to turn over all transcripts in his possession to the court, direct Mr. Gordon to not print any information obtained from these transcripts, direct Ms. B. not to furnish Mr. Gordon with any further transcripts, exclude Mr. Gordon from the remainder of the trial, and prohibit Mr. Gordon from reporting on the trial. The DSS attorney joined in the Law Guardian’s applications and also asked the court to direct Ms. B. not to share any of the pleadings which she might possess with the press. Cited in support of this request were Family Court Act §§ 166 (Privacy of records) and 1043 (Hearing not open to the public), and 22 NYCRR 205.4 (Access to Family Court proceedings) and 205.5 (Privacy of Family Court records).
Ms. B.’s attorney pointed out that 22 NYCRR 205.5 permits adult respondents to have access to transcripts of Family Court proceedings and does not prohibit their further dissemination by respondents. Mr. Gordon said that his primary interest in this case was in the procedures of the Family Court rather than in the facts, since between the transcripts and his discussions with Ms. B. he had a fairly clear picture of the dispute. He indicated he would try to avoid using the child’s name in his story and did not wish to sensationalize the allegations. He expected his newspaper to publish a story on Ms. B., her daughter and the neglect case, whether or not he was permitted to attend the balance of the trial.
REDISCLOSURE OF TRANSCRIPTS
Ms. B. is a party to this proceeding. She is, for the purposes of Family Court Act § 166, not part of the public. Family Court Act § 166’s prohibition against indiscriminate public viewing of Family Court records does not apply to her. Had Mr. Gordon sought access to court records directly from the court, he would have had to apply under this statute. Ms. B. as an adult respondent is entitled to access to all pleadings, filings, findings, decisions, orders, and transcripts under 22 *376 NYCRR 205.5. No statutory restriction, regulation or requirement in case law exists restricting the persons with whom she can share the transcript and pleadings.
New York State law contemplates at least three types of court records: public records open to inspection by anyone; sealed records (e.g., adoption records and records sealed by specific court order such as Lincoln interview transcripts [see, Matter of Lincoln v Lincoln, 24 NY2d 270]), which require a specific court order before anyone can see them; and private or confidential records to which certain classes of individuals such as the parties and their attorneys have access without court order. Records of the Family Court come under the second and third category. The records at issue in this proceeding are of the third type: confidential but not sealed either by statute or by court order. No request has been made by any attorney to seal them.
The three access cases cited by the Law Guardian interpret the rules of the trial court and Family Court Act on the privacy of Family Court records. (Matter of Clueso, 146 Misc 2d 861 [Fam Ct, NY County 1990]; Department of Social Servs. [Land] v Land, 110 Misc 2d 665 [Fam Ct, Nassau County 1981]; Matter of J. Children, 101 Misc 2d 479 [Fam Ct, Kings County 1979].) These decisions acknowledge the right of parties to have access to their own Family Court records.
The statutes and cases cited by DSS and the Law Guardian deal with the persons to whom the court may release its records, not to whom a party entitled to access may further release the records. In the absence of specific statute or court order, the adult respondent may rerelease court records legitimately obtained. The application for an order directing Mr. Gordon to surrender the transcripts to the court is denied as is the application that the court restrain Ms. B. from disseminating any transcripts or pleadings in this case.
PUBLICATION OF INFORMATION FROM THE TRANSCRIPTS
DSS counsel and the Law Guardian have asked this court to restrain publication of information received from a source not prohibited from disclosing it. The United States Supreme Court has stated that "[a]ny system of prior restraints of expression comes to this Court bearing a heavy presumption against its constitutional validity” (Bantam Books v Sullivan, 372 US 58, 70 [1963], citing Near v Minnesota, 283 US 697 [1931]). That principle was strongly reiterated in New York *377 Times Co. v United States (403 US 713 [1971]), the "Pentagon Papers case.”
Counsel does not argue that Ms. B. should or could be prevented from discussing the prior court proceedings or her version of the facts of this case. Counsel is not requesting that The Woodstock Times be barred from printing a story about Ms. B.’s experience with Rockland Children’s Psychiatric Center, Ulster County Child Protective Services and the Family Court. Counsel ask that the press be banned from using the transcripts because counsel claim they were improperly provided to the newspaper. This court holds that they were not. Counsel also claim that publicizing the case will harm the child this court is charged with protecting. The potential for additional harm to the child from publication of a story which refers to the transcripts, as distinguished from publication of a story based only on the mother’s version of the trial and of the underlying facts, is minuscule. If the child sees or learns about this story, she would probably be less traumatized by a story based upon all the facts elicited in court than a story based solely on her mother’s version of what happened. Little favors an order restricting The Woodstock Times from utilizing the transcripts. The First Amendment and 200 years of consistent judicial disfavor towards prepublication restrictions weigh against it. The application for a restraining order is denied.
EXCLUSION OF THE WOODSTOCK TIMES FROM THE TRIAL
Family Court Act § 1043 provides that "The general public may be excluded from any hearing under this article”. From the use of the word "may” instead of "shall” this court infers that the Legislature expected court proceedings to be open subject to the Judge’s discretion to exclude the general public.
Section 205.4 of the Uniform Rules for Trial Courts (22 NYCRR) lists factors to consider in exercising such discretion, which include whether the observer is causing or is likely to cause a disruption, whether a party objects to the presence of the observer, and whether the orderly and sound administration of justice requires exclusion. The Judge shall make findings prior to excluding an observer. Section 205.4 anticipates press attendance at Family Court proceedings when it states: "(b) The judge shall, when necessary to preserve the decorum of the proceedings, instruct representatives of the news media and others regarding the permissible use of the courtroom and *378 other facilities of the court, the assignment of seats to representatives of the news media on an equitable basis, and any other matters that may affect the conduct of the proceedings.” This relatively recent subdivision was intended to liberalize access to the Family Court.
Section 4 of the Judiciary Law provides that "[T]he sittings of every court within this state shall be public, and every citizen may freely attend the same”. Exceptions to this general rule allow the court in its discretion to exclude from specified types of proceedings all persons who are not directly interested. The proceeding now before the court falls under one of those exceptions. However, this discretion is exercised against a background of a strong presumption that all trials should be public, dating back over 200 years to the founding fathers’ fear of the Star Chamber. (Richmond Newspapers v Virginia, 448 US 555 [1980]; Matter of Westchester Rockland Newspapers v Leggett, 48 NY2d 430 [1979].) The court must balance the public’s clear interest in open trials against other legitimate public interests, including protection of minors.
The courts have authority tó limit disclosure of certain testimony or identifying information. Domestic Relations Law § 235 (2), dealing with custody trials, provides "If the evidence on the trial of such an action or proceeding be such that public interest requires that the examination of the witnesses should not be public, the court or referee may exclude all persons from the room except the parties to the action and their counsel, and in such case may order the evidence, when filed with the clerk, sealed up, to be exhibited only to the parties to the action or proceeding or someone interested, on order of the court.” (Emphasis supplied.) Civil Rights Law § 50-b provides that the court having jurisdiction over an alleged sex offense may restrict disclosure as it deems necessary and proper to preserve the confidentiality of the victim’s identity. Civil Rights Law § 50-c creates a private right of action for damages by any person injured if the victim’s identity is disclosed in violation of section 50-b.
For the most part, the reported cases which discuss the issue of press presence in Family Court proceedings or Supreme Court custody proceedings have allowed press presence with certain restrictions. (Matter of S. Children, 140 Misc 2d 980 [Fam Ct, Orange County 1988]; Matter of Chase, 112 Misc 2d 436 [Fam Ct, NY County 1982]; Matter of Elizabeth D., 127 AD2d 971 [4th Dept 1987]; Matter of Baum, 86 Misc 2d 409 [Fam Ct, Suffolk County 1976], affd 61 AD2d 123 [2d Dept *379 1978]; Anonymous v Anonymous, 158 AD2d 296 [1st Dept 1990]; Merrick v Merrick, 154 Misc 2d 559 [Sup Ct, NY County 1992] , affd 190 AD2d 516 [1st Dept 1993].)
In both cases in which closure was granted and the press excluded, Matter of Katherine B. (189 AD2d 443 [2d Dept 1993] ) and Matter of Robert M. (109 Misc 2d 427 [Fam Ct, NY County 1981]), the child’s name was already in the public domain and the Family Court could not prevent the information obtained during the Family Court trial from being associated with the child’s name. In both those cases the respondent opposed the presence of the press. In this case, the respondent seeks it.
An order permitting Mr. Gordon to cover these proceedings on certain conditions, including an agreement that he not identify Jane by name, would be best for Jane, since a story will run on this case whether or not Mr. Gordon attends the trial. Mr. Gordon already knows most of the underlying facts which have come out at trial and probably has a good idea of what will come out in the rest of the trial. Ms. B. is free to tell Mr. Gordon the substance of her imminent testimony and presumably has done so. Nonetheless, Mr. Gordon will, if he observes the trial, inevitably gain more information about matters which are extremely embarrassing to Jane and which, if connected with her name, might cause her more trauma than she has apparently endured already. For instance, Jane’s psychiatric records are now in evidence and have been referred to at length in the prior testimony of her psychiatrist. If the court allows Mr. Gordon to attend these proceedings, he will be permitted to review the psychiatric records.
There is a public interest in opening this trial to the press. Child protection has been the subject of much legislation and public comment in recent years. The general public remains uninformed of the Family Court process because of the widely held perception that its proceedings are closed to all but the parties and people immediately interested in the trial. Mr. Gordon has indicated that one of his primary interests is in the Family Court process. It is in the public interest for such information to be disseminated not only from a disgruntled respondent’s point of view but also from the perspective of an informed observer. Neither the Judge nor the DSS attorney nor the Law Guardian is permitted to comment on a pending case. Thus if the press cannot attend a given proceeding, the only public version of the proceedings will come from the *380 respondent. We should not complain about biased reporting when the press is not permitted full access to all of the facts.
There is a public good in seeing justice done in the Family Court and in understanding the Family Court, social services, and the mental health systems. The policy of closing the court to protect children may have had the opposite effect. We cannot expect society to remedy problems it cannot see and does not understand just as we cannot expect newspapers to file accurate reports on cases of child abuse if they are denied the most accurate information about that abuse.
With respect to the 22 NYCRR 205.4 factors this court finds first, that Mr. Gordon is not likely to cause a disruption in the proceedings; second, that the orderly and sound administration of justice does not require that all observers be excluded from the room; and third, that although the Law Guardian and DSS object to the presence of Mr. Gordon at the proceeding, that objection does not divest the court of its own discretion to determine who should be present. This court has the inherent power to conduct its own proceedings and set reasonable conditions on the conduct of those permitted to attend them. The court specifically finds that the child’s interest in confidential proceedings and the public benefit from an open proceeding can best be accommodated by permitting Mr. Gordon to be present under the following conditions:
(1) No audiovisual coverage, portrait sketching or the taking of still or motion pictures shall be permitted in the courtroom or the Family Court building. Outside the Family Court building, there shall be no such coverage of children, the respondent, witnesses or others whose identities are hereinafter restricted.
(2) The Family Court files, records, and court calendar, DSS records, mental health records, and other professional reports are not public records. If confidential records are offered in evidence in any proceeding, the press shall be permitted to review copies of the same, except that certain records and reports from counseling programs funded by the Federal Government may not be inspected without specific court authority due to the mandatory confidentiality provisions of 42 USC § 290dd-2 and the penalties provided therein. No names contained in the files shall be printed in any story carried by the press.
(3) Under no circumstances may names of people who reported possible abuse or neglect to the authorities through the Hotline or in confidence be published.
*381 (4) The name, residence and other identifying information other than age, sex and interrelationships of the respondent, any child (victim or witness), foster parents, school teachers or "covert” police witnesses may not be revealed. Names of material and character witnesses or professional expert witnesses may not be revealed. Because the court has specific statutory responsibility under the Civil Rights Law to restrict the use of Jane’s name, Jane’s full or correct name shall not be printed regardless of the fact that Mr. Gordon has independent knowledge of her identity. Mr. Gordon shall not print anything that will identify the foster home, its geographic location, the school or school district the child attends, or anything else that might tend to reveal where the child is living and/or attending school, counseling or church. No details of any sexual abuse allegations shall be printed. Mr. Gordon shall not contact the child, foster parents, teachers and/or school officials. If any child testifies in this proceeding, Mr. Gordon may be excluded from that testimony at the discretion of the court.
(5) A full certified copy of the transcript of the two prior days of trial shall be made available to Mr. Gordon for review in the Family Court. Mr. Gordon shall not print anything referring to the transcript without having first compared and confirmed that the transcript given to him by the respondent is an exact duplicate of the official transcript maintained by the court.
When trial resumes, the court will ask Mr. Gordon whether or not he agrees to these conditions. If he does agree, he will be permitted to stay. If he does not agree, he will be excluded from the courtroom for the trial.